**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SHAWN BUCK,**

**Plaintiff,**

**v.** **Case No. 8:10-cv-980-T-26TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

**Defendant.**
______________________________/

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and the case remanded.

I.

Plaintiff was thirty-three years old at the time of his administrative hearing in April 2008. He stands 5' 11" tall and weighed 290 pounds. Plaintiff's education includes three years of college. His past relevant work was as a customer-service manager, payroll manager, welder, and trailer builder. Plaintiff applied for disability benefits in February 2006, alleging disability as of February 4, 2005, by reason of severe back pain and depression. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. His wife and a vocational expert also testified.

In essence, Plaintiff testified that he is unable to work because of a bad back. By his account, he injured his back in 2003 and again in 2005. After the 2003 injury, he underwent a diskectomy at L4-L5 with good results. He returned to work and did well. After the injury in 2005, he underwent a disc replacement surgery during which an artificial disc was implanted. The surgery failed and he was left with severe pain. He received a workers' compensation settlement of $249,000. At the time of the hearing, he had pending a product liability suit against the manufacturer of the artificial disc. He has been advised that he will need another surgery. He described constant, radiating low-back pain extending down his left leg and also up his spine. He recently has experienced numbness in his left hand and fingers. He can use his right hand. He has tried medication, a TENS unit, pool therapy, epidural injections, and facet blocks and nothing has helped. The pain medication makes him confused. Sitting and standing cause the most pain, lying down helps a little. The pain affects his concentration and his inability to do things has caused him depression.

Plaintiff testified that he can no longer hunt, fish, or scuba dive. He continues to smoke cigarettes. He estimated he can walk for less than one block with breaks, stand for ten minutes, and sit for ten to fifteen minutes. He cannot lift a gallon of milk. He does not do household chores or drive more than a few miles. His wife helps him with his personal hygiene. On a daily basis, he watches television and sleeps fitfully. (R. 492-520).

The ALJ next took testimony from Dr. Robert Beatles, a vocational expert ("VE"). After classifying Plaintiff's past work and identifying transferable skills, the VE testified on an assumption of an individual of Plaintiff's age, education and work experience capable of light exertional work with occasional postural limitations and limitations for performing only simple tasks and only limited public contact. While such individual could not perform Plaintiff's past work, the VE opined that he could perform work such as production assembler and small parts assembler. According to the VE, these jobs would still be available if such hypothetical individual needed a sit/stand option. If such individual was limited to sedentary exertional work with such limitations, the VE testified that no work would be available. The VE agreed that pain at a level above the moderate level could affect a person's ability to concentrate, as well as his pace and persistence, and thus his ability to perform meaningful work. (R. 520-31).

Plaintiff's wife testified last. She gave certain "before and after" testimony indicating Plaintiff has gone from being a happy, productive, sociable person to a depressed and withdrawn person because of his pain. He is little help around the house or with their daughter. She has to help him bathe. Their relationship no longer feels like a marriage. In her view, Plaintiff could benefit from mental health treatment although he was not receiving any. (R. 532-39, 545-46).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary. Plaintiff's date last insured for benefits was July 31, 2007.

By his decision of June 27, 2008, the ALJ rendered a partially favorable decision. In particular, the ALJ determined that Plaintiff was disabled under the Act between February 4, 2005, and July 31, 2007, by reason of his severe degenerative disc disease, obesity, and anxiety. However, from August 1, 2007, forward, the ALJ determined Plaintiff's medical condition improved and he could perform light exertional work involving simple tasks, with a sit/stand option and occasional postural limitations and no more than limited contact with the public. Upon this finding and the testimony from the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled after July 31, 2007. (R. 22-36). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

To qualify for Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

Here, the ALJ employed the five step evaluation process dictated by 20 C.F.R. § 1520 and concluded Plaintiff was disabled for a closed period through July 31, 2007. Although under a disability through July 31, 2007, applying the provisions of 20 C.F.R. § 404.1594, the

ALJ found evidence of medical improvement thereafter related to Plaintiff's ability to work. At issue on this appeal is the ALJ's determination that medical improvement had occurred such that Plaintiff was no longer disabled.

A claimant's disability benefits may be terminated if there has been any medical improvement, if the improvement is related to the ability to work, and if the claimant is currently able to engage in substantial gainful activity.[1] 20 C.F.R. § 404.1594(a). "Medical improvement is any decrease in the medical severity of . . . impairment(s) [that] was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* And, a medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities . . ." 20 C.F.R. § 404.1594(b)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84

[1]The sequential evaluation process used in determining whether a disability continues is set forth in 20 C.F.R. § 404.1594(f).

F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

As in all such reviews, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises five claims on this appeal. Thus, he urges remand and reversal for an immediate award of benefits for the failure of the ALJ to: (1) properly analyze obesity

post-August 1, 2007; (2) follow proper analytical procedure as to medical improvement; (3) give proper weight to opinion of treating physician and examining physician during the relevant time period resulting in a finding of disability; (4) properly utilize the Eleventh Circuit pain standard; and (5) properly analyze wife's testimony. (Doc. 10). In response, the Commissioner denies any such errors and urges that the demand for an immediate award of benefits is improper.

Plaintiff's second and third claims are somewhat interrelated and addressed together. In his second claim, Plaintiff suggests that the ALJ failed to follow the sequential analysis called for under the regulations in concluding that Plaintiff experienced medical improvement as of August 1, 2007. Further, Plaintiff rather summarily urges that the ALJ inappropriately relied on conclusory statements made in August 2007 by Dr. Trimble, a treating pain specialist, and other statements from a physical therapist, in concluding that Plaintiff experienced medical improvement. By his third claim, Plaintiff urges that the ALJ failed to give due weight to the multiple opinions of Dr. Trimble and to the opinions of Dr. Peloza, an examining doctor.

While I cannot agree with the entirety of Plaintiff's arguments, I find the ALJ's handling of the medical improvement issue and the reports from two treating doctors confusing in the least and troubling enough to merit a remand for further consideration. Thus, insofar as Plaintiff claims the ALJ did not follow the sequential analysis dictated at 20 C.F.R. §1594, a fair reading of the decision clearly reflects the contrary.[2] *See* (R. 24-35). However,

---

[2]This is not say that the findings made at each step could not have been articulated more clearly.

after consideration of the medical record, I am obliged to conclude that a remand for further consideration of the whole of the record is necessary because the ALJ's determination that there was evidence of medical improvement is not well supported and his consideration of the evidence from Drs. Sharf and Trimble is confusing at a minimum. *See Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986) (citing *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir. 1982)) (failure to provide the reviewing court with a sufficient basis on which to determine that the correct legal principles have been followed or that substantial evidence exists mandates a reversal).

As the decision reflects, under the provisions of 20 C.F.R. § 404.1520, the ALJ initially concluded that Plaintiff had the residual functional capacity ("RFC") for sedentary work during the closed period, i.e., from February 4, 2005, through July 31, 2007. However, he further concluded that Plaintiff's ability to perform work at this level was impeded by additional limitations, which according to the VE, would prevent any competitive employment at the sedentary level. *See* (R. 29, 525). As a consequence, Plaintiff was determined to be disabled through July 31, 2007. (R. 29-30). However, for the period thereafter, the ALJ found evidence of medical improvement in the purported opinions from two of Plaintiff's treating sources, Dr. Howard Sharf (orthopedist) and Dr. Gerald Trimble (pain management specialist). Following the sequential evaluation process dictated by 20 C.F.R. § 404.1594, the ALJ went on to conclude that Plaintiff could thereafter perform a restricted range of light work and was no longer disabled. (R. 30-36).

As noted above, the ALJ found evidence of medical improvement on and after August 1, 2007, such that Plaintiff was thereafter able to perform a limited range of light

exertional work.[3] (R. 30-31). By the ALJ's account, such improvement was demonstrated in a report by Dr. Sharf from April 2006 (R. 381) and one from Dr. Trimble in August 2007 (R. 385). *See* (R. 30-31). And, according to the ALJ, those doctors had opined that Plaintiff was capable of performing "sub light" or sedentary work no later than August 2007.[4] (R. 27-28). By my consideration, the ALJ overstates, if not mischaracterizes, the statements from these doctors. Thus, contrary to the ALJ's statement that Dr. Sharf reported that Plaintiff had improved enough to then perform sub-light work (R. 26), Dr. Sharf in fact opined that Plaintiff was not ready to return to work at that time.[5] (R. 381). While Dr. Trimble noted in August 2007 his agreement with those limitations previously imposed by Dr. Sharf, he deferred to Dr. Sharf on the question of when Plaintiff would return to function.[6] (R. 385). Again, it is difficult to read this statement to support the ALJ's conclusion that "in August 2007, the pain

---

[3]In support of a RFC for light work as of August 2007, the ALJ concurred with the opinions of the non-examining state agency doctors who reviewed Plaintiff's medical records in 2006 and found that Plaintiff could perform light work. (R. 34). In this case, how any review of records in 2006 could provided substantial evidence for functional capacity in August 2007 is unclear.

[4]Just what the ALJ intended to mean by "sub light" work is not entirely clear. In any event, despite relying on opinions for "sub light" and sedentary work, the ALJ determined that Plaintiff was capable of performing *light* work.

[5]The statement by Dr. Sharf in April 2006 listed as "physical limitations" no lifting more than 20 pounds with no prolonged standing, stooping, bending, kneeling, crawling or walking." However, when asked when Plaintiff might return to work, Dr. Sharf stated, "[c]annot determine at this time. Depends upon progress with pain management." (R. 381). And, this statement was made during the period when the ALJ determined Plaintiff to be disabled.

[6]In particular, the question posed was: "[b]ased on your last office visit of 5/31/07, is your patient able to return to function? If so, please offer restrictions and limitations," to which Dr. Trimble responded "per Dr. Sharf." (Doc. 385).

specialist changed his view (from his July 2007 statement for "no work") to indicate that the claimant was then capable of performing sub light or sedentary work." (R. 27). Furthermore, because Dr. Sharf's statement was made during the period Plaintiff was found disabled and Dr. Trimble's statement essentially reflects no change in the limitations, I cannot read Dr. Trimble's statements to support a conclusion for medical improvement by August 1, 2007. If anything, such would appear to reflect no change in the Plaintiff's condition from his period of disability.[7]

On the other hand, the statement by Dr. Trimble does indicate his concurrence in an opinion from a third doctor that Plaintiff could return to sedentary work.[8] (R. 385). That alone, however, would not demonstrate medical improvement in this case. And, in any event, as subsequently explained by the VE, work at that level was unavailable to Plaintiff when all the limitations imposed by the ALJ were considered. *See* (R. 523-25).

Regarding the treating source testimony from Drs. Sharf and Trimble, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053

---

[7]Under the applicable regulation, the point of comparison for purposes of determining whether medical improvement has occurred is between the current medical severity of those impairments present at the time of the favorable medical decision of disability and the medical severity of those impairments at that time. *See* 20 C.F.R. § 404.1594(b)(7). Here, the ALJ looked at the same evidence for both periods and seemingly came to differing conclusions. To this end, it does not appear that the ALJ's finding of medical improvement was based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with Plaintiff's back impairment as required by the regulations. *See id.* at § 404.1594(b)(1).

[8]In any event, the ALJ does not discuss or mention the opinion of this third doctor, Dr. Jorge Chaumont.

(11th Cir. 1986); *see also* 20 C.F.R. § 404.1527(d)(2). Here, the ALJ purports to do so, but it appears he does so only in connection with those aspects of the treating doctor's reports that support his conclusion. Thus, while he accepted the treating doctors' assessment of a physical limitation for lifting no more than 20 pounds with certain postural and mental limitations, the ALJ chose to ignore that both doctors believed Plaintiff unable to work due to pain at the time of their respective reports. An ALJ clearly is not required to discuss every piece of record evidence. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). However, an ALJ cannot pick and choose which evidence supports his decision while disregarding evidence to the contrary. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (concluding decision supported by substantial evidence where ALJ focused on one aspect of the evidence while disregarding contrary evidence); *Broughton v. Heckler,* 776 F.2d 960, 961 (11th Cir. 1985) (providing that ALJ's failure to mention or consider contrary medical records, let alone articulate reasons for disregarding them, is reversible error).

Furthermore, it is unclear what weight the ALJ actually gave to the report from examining physician, John H. Peloza, M.D., who assessed Plaintiff in November 2007 and found him significantly limited and unable to work as well. (R. 393-99). While purportedly giving his assessment "some weight," the ALJ indicated the opinions of the treating doctors were entitled to more weight. (R. 28). Since it appears that the ALJ actually gave little or no weight to Dr. Peloza's assessment, some clarification is in order. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (providing that the ALJ must state with particularity the weight given different medical opinions and the reasons for the weight given, and failure to do so is reversible error).

Finally, while I disagree with most of Plaintiff's ramblings about the ALJ's consideration of the functional capacity evaluation performed by a physical therapist in November 2006 (again within the period when Plaintiff was determined to be disabled) as such surely merited consideration, I again find it confusing that the ALJ would cite to this evaluation to demonstrate medical improvement on and after August 1, 2007.

Accordingly, for the reasons set forth above the ALJ's decision should be reversed and the case remanded for clarification and further consideration. In sum, the ALJ's finding of medical improvement as of August 2007 is not supported by substantial evidence as a result of his consideration of the opinions of Drs. Sharf, Trimble, and Peloza. On remand, the ALJ should state with particularity the weight accorded those opinions, as well as all other medical opinions of record. The ALJ should also state with particularity the evidence on which he relies should he again find medical improvement in accordance with 20 C.F.R. § 1594.

Because the ALJ's reevaluation of the medical evidence may dictate different results on remand, Plaintiff's other claims need not be addressed. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). To avoid future allegations of error, however, the ALJ would be well-advised to consider Plaintiff's obesity in accordance with SSR 02-1p. Similarly, should the ALJ again have to assess the credibility of Plaintiff's subjective complaints post-August 2007 and find them not fully credible, he should provide sound reasons for doing so.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance

with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation. I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
29th day of July 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Richard A. Lazzara, United States District Judge
Counsel of Record